## INSURANCE ENDORSEMENTS

IT IS UNDERSTOOD AND AGREED that the Saab Model 340B Aircraft, manufacturer's serial no. 340B-181, U.S. Registration No. N590MA (the "Aircraft") is encumbered by a lien in favor of National Westminster Bank PLC ("Secured Party") for the benefit of the holders of certain notes issued by Swedish Lessor (the "Noteholders"), and leased by First Security Bank, National Association, not in its individual capacity but solely as Owner Trustee ("U.S. Lessor") under Trust Agreement No. 1 dated as of April 10, 1990 between First Security Bank, National Association and Security Pacific Leasing Corporation (the "Owner Participant"), to Fairbrook Leasing, Inc. ("Sublessor") under U.S. Lease Agreement No. 1 dated as of April 10, 1990, and subleased by Sublessor to Mesaba Aviation, Inc. ("Named Insured") under an Aircraft Sublease Agreement dated as of June 1, 1997. Swedish Aircraft Two KB ("Swedish Lessor") leases the Aircraft to U.S. Lessor under Amended and Restated Aircraft Lease Agreement No. 1 dated as of April 10, 1990, and Fairbrook, Inc. ("Guarantor") guarantees certain obligations of Sublessor.

With respect to the interests of Secured Party, Guarantor, Swedish Lessor, the Noteholders, U.S. Lessor, Owner Participant and Sublessor in the Aircraft insured under this policy, the undersigned Company (the "Company") hereby agrees as follows:

A.   **LOSS PAYABLE ENDORSEMENTS**

1.   Loss or damage, if any, to the Aircraft described in this policy in excess of $100,000 shall be payable solely to Secured Party until Secured Party notifies Company in writing its lien is released; thereafter to Swedish Lessor until Swedish Lessor notifies Company in writing that its lease referenced above has terminated; thereafter to U.S. Lessor. Loss or damage of $100,000 or less shall be payable to the Named Insured, unless Secured Party (or after Secured Party has notified Company in writing that its Lien has been released, Swedish Lessor, or after termination of the Swedish Lease, U.S. Lessor) notifies Company in writing that a U.S. Lease event of default exists, in which case such amount shall be payable to Secured Party (or after Secured Party has notified Company in writing that its Lien has been released, Swedish Lessor, or after termination of the Swedish Lease, U.S. Lessor), or unless U.S. Lessor has notified Company in writing that a Sublease event of default exists which is not a U.S. Lease event of default, in which case such amounts shall be payable to Sublessor. Warranted that none of Secured Party, Guarantor, Swedish Lessor, the Noteholders, U.S. Lessor, Owner Participant or Sublessor have any operational interest in the Aircraft.

2.   The insurance under this policy as to the interests only of Secured Party, Swedish Lessor, the Noteholders, U.S. Lessor, Guarantor, Owner Participant and Sublessor shall not be impaired in any way (i) by any foreclosure or other proceedings or notice of sale relating to the Aircraft, (ii) by any change in the title or ownership of the property or by any breach or violation of any warranties, declarations or conditions of this policy, (iii) by any omission or neglect, or by the performance of any act in violation of any terms or conditions of the policy or because of the failure to perform

SCANNED

AUG 13 2004

U.S. DISTRICT COURT MPLS

any act in violation of any terms of conditions of the policy (including operation of the Aircraft by a noncertified pilot), (iv) because of the subjection of the property to any conditions, use or operation which causes this policy not to be in effect, or not permitted by the policy, or (v) because of any false statement concerning this policy or the subject hereof, in each case by the Named Insured's employees, agents or representatives, or any other person (except U.S. Lessor, Sublessor, Swedish Lessor, the Noteholders, Owner Participant, Guarantor or Secured Party, and then such policy will be impaired only as to such person) whether occurring before or after the attachment of this endorsement, or whether before or after the loss.

3.    If the Named Insured fails to pay any premium or additional premium which is due or becomes due under the terms of this policy, then the Company agrees to give written notice to Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor of such nonpayment of premium; and this policy shall continue in full force and effect if Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, any Noteholder, Owner Participant or Sublessor, when so notified in writing by the Company of the failure of the Named Insured to pay such premium, pays or causes to be paid the premium due within 10 days following receipt of the Company's written notice (7 days, or such shorter period as may from time to time be the longest period of time obtainable in the industry, in the case of any war risk and allied perils coverage). If all of Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, such Noteholder, Owner Participant or Sublessor decline to pay said premium or additional premium, the rights of Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, any Noteholder, Owner Participant and Sublessor under this Loss Payable Endorsement may be terminated by the Company only 30 days after receipt of said written notice to Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor.

4.    If the Company elects to cancel this policy in whole or in part for nonpayment of premium or for any other reason, the Company will forward a copy of the cancellation notice to Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor at the offices specified hereinafter concurrently with the sending of notice to the Named Insured but in such case this policy shall continue in force for the benefit of Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor only for 30 days after written notice of such cancellation shall have been mailed to Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor. In no event, as to the interest only of Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor, shall cancellation, lapse or material change of any insurance under this policy be effected at the request of the Named Insured before 30 days after written notice of request for cancellation or change shall have been mailed to Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor by the Company. In the event of cancellation of this policy, the unearned premium shall be paid to Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant or Sublessor, provided Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, such Noteholder, Owner Participant or Sublessor, as the case may be, has advanced the premium.

5.   Severability of Interest is included.  Coverage provided herein is primary without contribution from any other insurance which might be available to U.S. Lessor, Sublessor, Guarantor, Swedish Lessor, any Noteholder, Owner Participant and Secured Party.

6.   Whenever the Company shall pay to Secured Party, U.S. Lessor, Swedish Lessor, Owner Participant or Sublessor a sum representing a total loss to the Aircraft insured under this policy and shall claim that as to the Named Insured no liability therefor exists, the Company, at its option, may as provided in Paragraph 1 above, pay to Secured Party, U.S. Lessor, Swedish Lessor, Owner Participant or Sublessor, as the case may be, the Stipulated Loss Value (as defined in the Sublease) and the Company shall thereupon be subrogated to and receive a full assignment and transfer, without recourse, of said obligations and the security held as collateral therefor; but shall not exercise such subrogation right until Secured Party, Swedish Lessor, U.S. Lessor or Sublessor, as the case may be, recovers in full the amount to which it is entitled under the Sublease from Named Insured.

7.   If Secured Party, Owner Participant, Guarantor, Swedish Lessor, any Noteholder, U.S. Lessor and Sublessor so elect, the coverage granted under this policy shall continue in full force and effect as to the interests of Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, such Noteholder, Owner Participant and Sublessor only, and Secured Party, Owner Participant, Guarantor, Swedish Lessor, any Noteholder, U.S. Lessor and Sublessor agree to pay premium therefor, for a period of 30 days after expiration of said policy unless an acceptable policy in renewal thereof with loss thereunder payable in accordance with the terms of this Loss Payable Endorsement shall have been issued by an insurance company acceptable to Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor.  In the event of a loss not otherwise covered during the extended 30 day period herein referred to, an annual policy covering the same hazards to the property insured under the original policy shall be issued and accepted by Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor.

8.   Should the ownership and right of possession of the Aircraft covered under this policy become vested in Secured Party, Swedish Lessor, U.S. Lessor or Sublessor or their respective agents, this policy shall continue for the term thereof for the benefit of Secured Party, Swedish Lessor, U.S. Lessor and Sublessor (with all incidents of ownership of the policy) but, in such event, Paragraphs 2, 6 and 7 of this Aircraft Loss Payable Endorsement shall no longer apply; provided, nevertheless, all privileges and endorsements which, by reason of the printed conditions of the policy, are or may be necessary to maintain the validity of the contract are hereby granted for a period of 30 days and all notices likewise required to be given to the Company by the Named Insured are hereby waived for a period of 30 days with the exception of requirements applying at the time of or subsequent to a loss.   Under such circumstances the approved purpose of use shall not apply to any operation for which a change is made and provided that the Aircraft covered under this policy shall only be operated in flight by a pilot holding a valid and effective Commercial Pilot Certificate issued by the FAA with proper ratings for the flights involved.

9.    The Company waives any rights of subrogation against the Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor, except with respect to the gross negligence or willful misconduct of such party; provided, that with respect to property damage coverages hereunder such waiver shall not operate to prejudice the insurer's rights of recourse against Saab-Scania AB, and/or Saab AB, and/or Saab Aircraft of America, Inc., and/or any subsidiary thereof as manufacturers, repairers, suppliers or servicing agents (other than financial services) where such rights of recourse would have existed had such waiver not been given; and provided, further, that the exercise by insurer of subrogation derived from rights retained by Named Insured shall not, in any way, delay payment of any claim that would otherwise be payable by Company but for the existence of rights of subrogation derived from rights retained by Named Insured.

B.    **LIABILITY POLICY ENDORSEMENTS**

The liability insurance section of this policy is endorsed, with respect to the Aircraft,

1.    to name U.S. Lessor (as Owner Trustee and in its individual capacity), Guarantor, Swedish Lessor, each Noteholder, Owner Participant, Sublessor, Secured Party, Saab Aircraft Credit AB as general partner of Swedish Lessor, the general and limited partners of Swedish Lessor (and, until at least May 1, 1999, AMR Leasing Corporation, Simmons Airlines, Inc., Executive Airlines, Inc., American Airlines, Inc. and AMR Corporation) as additional insureds, as their respective interests may appear, including all officers, directors, employees and shareholders of each of the foregoing; and warranted that none of the foregoing has any operational interest in the Aircraft;

2.    to provide that if this policy is canceled for any reason whatever or any substantial change is made in the coverage which affects the interests of U.S. Lessor, Sublessor, Guarantor, Swedish Lessor, any Noteholder, Owner Participant, or Secured Party, or if such insurance is allowed to lapse for nonpayment of premium, such cancellation, change or lapse shall not be effective as to U.S. Lessor, Owner Participant, Guarantor, Swedish Lessor, each Noteholder, Sublessor and Secured Party until 30 days or, in the case of any war risk and allied perils coverage, such lesser time as is customary after mailing to U.S. Lessor, Sublessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant, and Secured Party, respectively, of written notice from the insurers of such cancellation, change or lapse;

3.    to provide that if the Named Insured fails to pay any premium or additional premium which is due or becomes due under the terms of this policy, then the Company agrees to give written notice to Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor of such nonpayment of premium; and this policy shall continue in full force and effect if Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, any Noteholder, Owner Participant or Sublessor, when so notified in writing by the Company of the failure of the Named Insured to pay such premium, pays or causes to be paid the premium due within 10 days following receipt

of the Company's written notice (7 days, or such shorter period as may from time to time be the longest period of time obtainable in the industry, in the case of any war risk and allied perils coverage);provided that, if all of Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor decline to pay said premium or additional premium, the rights of Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, any Noteholder, Owner Participant and Sublessor under this Liability Endorsement may be terminated by the Company only 30 days after receipt of said written notice to Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor;

4.    to provide that the coverage granted under this policy shall continue in full force and effect as to the interests of Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor if any one of them agrees to pay premium therefor, for a period of 30 days after expiration of said policy unless an acceptable policy in renewal thereof shall have been issued by an insurance company acceptable to Secured Party, U.S. Lessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant and Sublessor;

5.    to provide that in respect of the interests of U.S. Lessor, Owner Participant, Guarantor, Swedish Lessor, each Noteholder, Sublessor and Secured Party, this policy shall not be invalidated by any action or omission of the Named Insured or any other person and shall insure the interests of U.S. Lessor, Sublessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant, and Secured Party, as they appear, regardless of any breach or violation by the Named Insured or any other person of any warranties, declaration or conditions contained in this policy or in the application therefor, if any;

6.    to provide that the Company waives any rights of subrogation against U.S. Lessor, Sublessor, Guarantor, Swedish Lessor, each Noteholder, Owner Participant, and Secured Party; provided that the exercise by the Company of rights of subrogation derived from rights retained by the Named Insured shall not, in any way, delay payment of any claim that would otherwise be payable by Company but for the existence of rights of subrogation derived from rights retained by the Named Insured; and

7.    to provide that Severability of Interest is included, such that coverage provided herein is primary without contribution from any other insurance which might be available to U.S. Lessor, Sublessor, Guarantor, Swedish Lessor, any Noteholder, Owner Participant or Secured Party.

C.    <u>NOTICES</u>

All notices herein provided to be given by the Company to Secured Party, Owner Participant, Guarantor, Swedish Lessor, each Noteholder, U.S. Lessor and Sublessor in connection with this policy and these Endorsements shall be mailed to or delivered to the following addresses:

First Security Bank, National Association, as Owner Trustee, as U.S. Lessor, and as Lender
79 South Main Street
Salt Lake City, Utah 84111

Attention: Corporate Trust Services

Security Pacific Leasing Corporation, as Owner Participant
555 California Street
4th Floor
San Francisco, CA 94104

Attention: VP- Operations

National Westminster Bank PLC, as Secured Party and Noteholder
135 Bishopsgate
7th Floor
London, EC2M 3UR
England

Attention: Aerospace Section

Fairbrook Leasing, Inc., as Sublessor
21300 Ridgetop Circle
Sterling, Virginia 20166
Attention: President

Fairbrook, Inc., as Guarantor
21300 Ridgetop Circle
Sterling, Virginia 20166

Attention: President

Swedish Aircraft Two KB, as Swedish Lessor
c/o Saab AB
S-581 88 Linköping, Sweden

Attention: Contracts Department

Union Bank of Switzerland, as Noteholder
Export Finance International
45 Bahnhofstrasse
CH-8021 Zurich
Switzerland

Attention: Mr. H. Droege

Nothing contained herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned policy, other than as above stated.

D.    **POLICIES**

The foregoing endorsements are hereby incorporated in and endorsed upon Policy No. _____ of the undersigned issued on _____ ___, 1997, with such endorsements being effective as of __:__ __.m. _____ ___, 1997.

_____
[Underwriter]

By_____

<u>EXHIBIT C</u>

<u>RETURN ACCEPTANCE CERTIFICATE</u>

AMENDMENT dated as of April 1, 2000 (this "Amendment") between Mesaba Aviation, Inc. ("Sublessee") and Fairbrook Leasing, Inc. ("Sublessor")

### INTRODUCTION

WHEREAS, Sublessee and Sublessor are parties to the Aircraft Sublease Agreement dated as of June 1, 1997 as supplemented by the Sublease Supplement No. 1, dated July 10, 1997 recorded by the Federal Aviation Administration on September 16 1997 as Conveyance No. JJ22948, as amended, supplemented or modified from time to time (collectively, the "Sublease");

WHEREAS, Sublessee and Sublessor desire to amend, effective as of the date hereof, the Sublease to extend the Basic Term (capitalized terms used herein without definition having the respective meanings assigned thereto in the Sublease) of the Sublease.

ACCORDINGLY, in consideration of the foregoing premises and of other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

Section 1.     Amendment of Sublease Supplement.

The Sublease Supplement is amended by deleting Section C in its entirety and substituting the following therefor:

"The period beginning on the Delivery Date and ending on April 1, 2001".

Section 2.     Miscellaneous.

2.1     Sublessee reaffirms that the Sublease remains in full force and effect upon the consummation of the transactions contemplated hereby and, as of the date hereof, reaffirms all of its covenants stated therein and remakes all of its representations and warranties stated therein, except to the extent any such representation or warranty relates specifically to a date other than the date hereof.

2.2     This Amendment may be executed in any number of counterparts and by the parties hereto on separate counterparts, each of which shall be an original, but all of which shall constitute but one and the same instrument.

2.3     Except as amended hereby, the Sublease remain in full force and effect.

IN WITNESS WHEREOF, Sublessor and Sublessee have caused this Amendment to be duly executed as of the day and year first above written.

SUBLESSOR

FAIRBROOK LEASING, INC.

By: _____
Title:   President

By: _____
Title:   Vice President


SUBLESSEE

MESABA AVIATION, INC.


By: _____
Title:

RECORDED

Federal Aviation Administration

Date  5-9-2000    Time  7:35 a.m.

Conveyance Number  TTO13068

By  Diane Ayers

-2-

IN WITNESS WHEREOF, Sublessor and Sublessee have caused this Amendment to be duly executed as of the day and year first above written.

SUBLESSOR

FAIRBROOK LEASING, INC.

By:_____
Title:

By:_____
Title:

SUBLESSEE

MESABA AVIATION, INC.

By:_____
Title: Executive Vice President

-2-

THIS AMENDMENT Agreement, dated as of March 15, 2001 (this "Amendment"), is between Mesaba Aviation, Inc. ("Sublessee") and Fairbrook Leasing, Inc. ("Sublessor")

## INTRODUCTION

WHEREAS, Sublessee and Sublessor are parties to the Aircraft Sublease Agreement dated as of June 1, 1997, as supplemented by the Sublease Supplement No. 1, dated July 10, 1997 (recorded as one document by the FAA Aircraft Registry on September 16, 1997 as Conveyance No. JJ22948, as amended, supplemented or modified from time to time (the "Sublease"), and

WHEREAS, Sublessee and Sublessor desire to amend the Sublease, effective as of the date hereof, to extend the Basic Term (capitalized terms used herein without definition having the respective meanings assigned thereto in the Sublease) of the Sublease and to amend certain terms and conditions of the Sublease,

ACCORDINGLY, in consideration of the foregoing premises and of other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

Section 1. Amendments to the Sublease.

1.1 The Sublease Supplement is hereby amended by changing Section C, in its entirety, to read as follows:

"C.  Basic Term:   The period beginning on the Delivery Date and ending on April 1, 2002; provided, however, that Sublessee shall return the Aircraft in full compliance with the Sublease on such earlier date as Sublessor may, in its sole discretion, set as the return date of the Aircraft upon not less that sixty (60) days' written notice to Sublessee."

1.2 The Sublease Rent Schedule is hereby amended by changing Section B, in its entirety, to read as follows:

"B.  Basic Rent:   Effective from and after April 1, 2001, $50,000 per month, payable in advance on each Basic Rent Payment Date; provided, however, that in consideration of Sublessee's recent acquisition and installation of a DFDR modification in the Aircraft, Sublessor hereby grants Sublessee a credit equal to the amount of Basic Rent due for the month of April 2001."

1.3 Notwithstanding any contrary provisions in the letter agreement from Sublessor to Sublessee that was dated April 3, 1998 and countersigned by Sublessee on

MDP

April 24, 1998, or in any other prior agreement, Annex II to the Sublease Rent Schedule is hereby reaffirmed in full by Sublessor and Sublessee, and the Usage Fees calculated thereunder (including, without limitation, the Usage Fees attributable to the 4000 hour inspection) shall be due upon the return of the Aircraft, as provided in Section 19(c)(ix) of the Sublease.

Section 2. <u>Miscellaneous.</u>

2.1  Sublessee reaffirms that the Sublease remains in full force and effect upon the consummation of the transactions contemplated hereby and, as of the date hereof, reaffirms all of its covenants stated therein and remakes all of its representations and warranties stated therein, except to the extent any such representation or warranty relates specifically to a date other than the date hereof.

2.2  This Amendment may be executed in any number of counterparts and by the parties hereto on separate counterparts, each of which shall be an original, but all of which shall constitute but one and the same instrument.

2.3  Except as amended hereby, the Sublease remains in full force and effect.

IN WITNESS WHEREOF, Sublessor and Sublessee have caused this Amendment to be duly executed as of the day and year first above written.

SUBLESSOR
FAIRBROOK LEASING, INC.

By: _____
Mark D. Pugliese
Executive Vice President
and General Counsel

By: _____
Gena H. Laurent
Senior Vice President –
Finance and Commercial

SUBLESSEE
MESABA AVIATION, INC.

By: _____
John S. Fredericksen
Executive Vice President
and General Counsel

TO THE EXTENT, IF ANY THAT THIS SUBLEASE SUPPLEMENT NO. 1 CONSTITUTES CHATTEL PAPER (AS SUCH TERM IS DEFINED IN THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN ANY APPLICABLE UNITED STATES JURISDICTION), NO SECURITY INTEREST IN THIS SUBLEASE SUPPLEMENT NO. 1 MAY BE CREATED THROUGH THE TRANSFER OR POSSESSION OF ANY COUNTERPART OTHER THAN THE ORIGINAL EXECUTED COUNTERPART CONTAINING THE RECEIPT THEREFOR EXECUTED BY NATIONAL WESTMINSTER BANK PLC AS SECURED PARTY ON THE SIGNATURE PAGE HEREOF.

## SUBLEASE SUPPLEMENT

Sublease Supplement No. 1, dated ~~June~~ July 10, 1997 to Aircraft Sublease Agreement dated as of June 1, 1997 (the "Sublease") between Fairbrook Leasing, Inc. ("Sublessor"), and Mesaba Aviation, Inc. ("Sublessee").

## INTRODUCTION

Sublessor and Sublessee have heretofore entered into that certain Aircraft Sublease Agreement dated as of June 1, 1997 relating to the Aircraft, Engines and Propellers more specifically identified below (the "Sublease"; defined terms therein being herein used with the same meanings). The Sublease provides for the execution and delivery of a Sublease Supplement for the purpose of subleasing the Aircraft under the Sublease as and when delivered by Sublessor to Sublessee in accordance with the terms thereof.

A counterpart of the Sublease, with this Sublease Supplement No. 1 attached thereto, is being filed for recordation with the Federal Aviation Administration as one document.

NOW, THEREFORE, in consideration of the premises and other good and sufficient consideration, Sublessor and Sublessee hereby agree as follows:

A.    The Aircraft. Sublessee hereby confirms to Sublessor that Sublessee has accepted the Aircraft described below for all purposes hereof and of the Sublease:

1

| AIRFRAME<br><br>Manufacturer | U.S. Registration Number | Model | Serial Number |
|---|---|---|---|
| Saab Aircraft | N590MA | 340B | 340B-181 |

| INSTALLED ENGINES<br><br>Manufacturer | Model | Serial Number |
|---|---|---|
| General Electric | CT7-9B | GE-E-785181 |
| General Electric | CT7-9B | GE-E-785121 |

| INSTALLED PROPELLERS<br><br>Manufacturer | Model | Serial Number |
|---|---|---|
| Dowty Rotol | R390/4-123-F/27 | DRG/9279/89 |
| Dowty Rotol | R390/4-123-F/27 | DRG/9278/89 |

Each of the above-referenced General Electric CT7-9B Engines has 750 or more rated takeoff horsepower or the equivalent of such horsepower.

Each of the above-referenced Dowty Rotol propellers is capable of absorbing 750 or more rated takeoff shaft horsepower.

B.  Delivery Date:    June ~~June~~ *July* 10 , 1997.

C.  Basic Term:    The period beginning on the Delivery Date and ending on June ~~June~~ *July* 10 , 2003. *

D.  Late Payment Rate:    The rate of the published base rate for the relevant period then in effect at Citibank, N.A., in New York, New York

\* Amended to 12/31/98 per letter dtd 4/3/98
(early termination)

2

E. <u>Counterparts:</u>   This Sublease Supplement may be executed in any number of counterparts and by the parties hereto on separate counterparts, each of which counterparts, shall for all purposes be deemed to be an original; and all such counterparts shall together constitute but one and the same Sublease Supplement.

3

IN WITNESS WHEREOF, the parties hereto have executed this Sublease Supplement Number 1 by their duly authorized officers as of the day and year first above written.

FAIRBROOK LEASING INC.

By:_____
    Name:  Gena H. Laurent
    Title:   Vice President


By:_____
    Name:  Torbjorn Lindberg
    Title:    President


MESABA AVIATION, INC.

By: _Darrell Richardson_
    Name: DARRELL RICHARDSON
    Title: VICE PRESIDENT

Receipt in New York, NY of an original counterpart of the foregoing Sublease Supplement is hereby acknowledged this _____ of _____, 1997.

First Security Bank, National Association,
not in its individual capacity, but solely as
Owner Trustee

By: _____
Its: Authorized Representative

Receipt in New York, NY of an original counterpart of the foregoing Sublease Supplement is hereby acknowledged this _____ of _____, 1997.

National Westminster Bank PLC

By: _____
Its: Authorized Representative

IN WITNESS WHEREOF, the parties hereto have executed this Sublease Supplement Number 1 by their duly authorized officers as of the day and year first above written.

FAIRBROOK LEASING, INC.

By: _____

Name: Gena H. Laurent
Title: Vice President

By: _____

Name: Torbjorn Lindberg
Title: President

MESABA AVIATION, INC.

By: _____
Name:
Title:

Receipt in New York, NY of an original counterpart of the foregoing Sublease Supplement is hereby acknowledged this _____ of _____, 1997.

First Security Bank, National Association, not in its individual capacity, but solely as Owner Trustee

By: _____
Its: Authorized Representative

Receipt in New York, NY of an original counterpart of the foregoing Sublease Supplement is hereby acknowledged this _____ of _____, 1997.

National Westminster Bank PLC

By: _____
Its: Authorized Representative

## SUBLEASE ASSIGNMENT

SUBLEASE ASSIGNMENT ("Assignment") dated as of June 1, 1997, between FIRST SECURITY BANK, NATIONAL ASSOCIATION, not in its individual capacity but solely as Owner Trustee ("Assignee"), SWEDISH AIRCRAFT TWO KB ("Lessor"), NATIONAL WESTMINSTER BANK PLC ("Secured Party") and FAIRBROOK LEASING, INC., a Delaware corporation ("Assignor").

## INTRODUCTION

WHEREAS, reference is made to U.S. Lease Agreement No. 1 dated as of April 10, 1990 between Assignee, as U.S. Lessor, and Assignor, as U.S. Lessee, and to U.S. Lease Supplement No. 1 thereto dated April 10, 1990, (collectively, the "U.S. Lease"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings assigned to them in the U.S. Lease;

WHEREAS, pursuant to the U.S. Lease, Assignee is leasing to Assignor one Saab 340B commercial aircraft bearing U.S. Registration No. N590MA and bearing manufacturer's serial number 340B-181 on the airframe constituting such aircraft, two General Electric Model CT7-9B engines installed on such aircraft and two Dowty Rotol propellers installed on such aircraft, together with any replacements thereof or substitutions therefor (the "Aircraft");

WHEREAS, Assignor has subleased the Aircraft to Mesaba Aviation, Inc. ("Sublessee") pursuant to an Aircraft Sublease Agreement dated as of June 1, 1997 between Assignor, as Sublessor, and the Sublessee, as Sublessee, and Sublease Supplement No. 1 thereto dated June 10, 1997 (collectively the "Sublease"); and

WHEREAS, Assignor, on the terms and conditions hereinafter set forth, is willing to assign to Assignee certain of Assignor's rights and interests under the Sublease and any supplements thereto, and Assignee is willing to accept such assignment, as hereinafter set forth;

NOW THEREFORE, in consideration of the mutual covenants herein contained and of other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.     Grant of Security Interest in the Sublease. In order to comply with its obligations under Section 7(b) of the U.S. Lease, (a) Assignor hereby pledges and grants to Assignee a security interest, with right of foreclosure, in all estate, right, title and interest of Assignor in, to and under the Sublease, and any supplement thereto, and any other sublease, sub-sublease or other assignments, now existing or hereafter arising, of assignor's rights and obligations under the U.S. Lease, together with all renewals, amendments, extensions and modifications of any of the foregoing and all

proceeds thereof, except (i) any proceeds of liability insurance payable to Assignor or Sublessee, (ii) payments under the general and general tax indemnities contained in the Sublease; provided that this exception shall not apply to any such indemnity payments to the extent that Assignor or Sublessee is obligated to make the same indemnity payments by the terms of any of the U.S. Operative Documents or the Sublease, respectively, and (iii) any interest or late charge in connection with the amounts specified in (i) or (ii) above (collectively, "Excepted Payments"); (b) Assignee hereby pledges and grants to (and confirms the existing pledge and grant to) (i) Lessor, as Collateral under the Lease, and (ii) Secured Party, as Collateral under the Owner Trustee Security Agreement, a security interest, with right of foreclosure in all estate, right, title and interest of Assignee in the collateral assigned to Assignee under clause (a) above; and (c) Lessor hereby pledges and grants (and confirms the existing pledge and grant to) Secured Party as Collateral under the Loan Agreement (Series A), a security interest, with right of foreclosure in all estate, right, title and interest of Lessor in the collateral assigned to Lessor under clause (b) above.  For purposes of this Assignment, the term "proceeds" includes whatever is receivable or received when the Sublease or their respective proceeds are sold, collected, exchanged or otherwise disposed of (excluding Excepted Payments), whether such disposition is voluntary or involuntary, and includes, without limitation, all rights to payment, including return premiums, with respect to any insurance relating thereto.

    2.    Obligations.  The obligations of Assignor secured by this Assignment shall consist of any and all debts, obligations and liabilities of Assignor to Assignee arising out of, connected with or related to the U.S. Lease, the U.S. Lease Supplement, the Representation Agreement, this Assignment and to Lessor arising out of, connected with or related to, the Program Agreement (solely as the Program Agreement relates to the Aircraft) and any other document related to any of the foregoing and all renewals, amendments, extensions and modifications thereof (the "Obligations").

    3.    Additional Representations and Warranties.  In addition to all representations and warranties of Assignor set forth in the U.S. Lease and the Representation Agreement and, solely with respect to Lessor, the Program Agreement (solely as the Program Agreement relates to the Aircraft), which are incorporated herein by this reference, Assignor hereby represents and warrants that:  (a) Assignor is, or upon execution thereof will be, the sublessor under the Sublease and no other Person, except Assignor, the Sublessee party thereto, Lessor and Secured Party on behalf of Noteholders, has or will have any right, title, claim or interest (by way of security interest or other Lien or charge or otherwise) in, against or to Assignor's interest, in the Sublease and (b) to the best of Assignor's knowledge, all information heretofore, herein or hereafter supplied to Assignee by or on behalf of Assignor with respect to the Sublease is true and correct, (c) to the best of Assignor's knowledge, the Sublease is, or upon execution thereof will be, genuine and enforceable in accordance with its terms against the Sublessee, and includes terms regarding the maintenance, operation, use, and insurance coverage of the Aircraft subject to the Sublease

2

substantially as rigorous as the corresponding terms of the U.S. Lease, (d) the amount represented by Assignor to Assignee as owing by the Sublessee is the correct amount actually and unconditionally owing by such Sublessee, (e) the Sublease and the Supplement thereto and any other agreements or documents previously disclosed to Assignee represent the sole agreement between Assignor and Sublessee relating to the maintenance, use, operation or insurance coverage of or on the Aircraft and the rentals and other payments (except for a security deposit) due from Sublessee with respect thereto, (f) to the best of Assignor's knowledge, Sublessee does not have nor will have any defense, setoff, claim or counterclaim against Assignor that can be asserted against Assignee, whether in any proceeding to enforce Assignee's rights in the Sublease or otherwise and (g) Assignee has a first priority perfected security interest in the Sublease.

Notwithstanding anything to the contrary set forth herein or in any of the U.S. Operative Documents, Assignee expressly agrees that, so long as no U.S. Lease Default or U.S. Lease Event of Default exists, Assignor may, from time to time, without either Secured Party's or Assignee's consent, modify, substitute, amend, supplement or terminate the Sublease, regardless of whether such modification, substitution, amendment, supplement or termination has a material adverse effect upon Assignee's rights under or Assignor's ability to perform the Sublease; provided, however, that (i) the Sublease shall comply with the terms of Section 7(b) of the U.S. Lease, (ii) Assignor shall not, without Secured Party's and Assignee's prior written consent, enter into any agreement modifying, amending or supplementing the Sublease if the effect would be to reduce the requirements of the Sublease with respect to maintenance, use, operation or insurance coverage below the corresponding requirements of the U.S. Lease, and (iii) no agreement materially amending, supplementing or otherwise modifying any of the provisions of the Sublease or any supplement thereof, and no substitute subleases otherwise described herein, shall be effective until the chattel paper counterpart of such agreement or substitute sublease has been delivered to Assignee.

4.   Additional Covenants.   In addition to all covenants and agreements of Assignor set forth in the U.S. Lease and the Representation Agreement and, solely with respect to Lessor, the Program Agreement (solely as the Program Agreement relates to the Aircraft), which are incorporated herein by this reference, Assignor hereby agrees (a) not to use, and to use its best efforts not to permit the Sublessee to use, the Sublease or the Aircraft subleased thereunder unlawfully or in violation of any material provision of the U.S. Lease, the Representation Agreement or this Assignment, or any applicable statute, regulation or ordinance, (b) not to consent to any action by the Sublessee, or grant any waiver under the Sublease, that would have the effect of reducing the requirements of the Sublease regarding maintenance, use, operation and insurance coverage below the corresponding requirements of the U.S. Lease, (c) to deliver to Lessor, Secured Party and Assignee copies of Sublessee's balance sheet as of the last day of its most recent fiscal year and related statements of income and retained earnings and changes in financial condition for the fiscal year then

ended, certified by independent public accountants if such financial statements are available through the public records of the SEC or any federal governmental agency or are provided to Assignor by the Sublessee without any confidentiality restrictions, (d) to notify Assignee promptly of any change in Assignor's name or place of business or, if Assignor has more than one place of business, its head office, (e) to procure, execute and deliver from time to time any supplements hereto and any endorsements, assignments, financing statements and other writings deemed necessary or advisable by Assignee to perfect, maintain and protect its security interest hereunder and the priority thereof, including, without limitation, the prompt delivery to Assignee of an original counterpart of the Sublease, any supplements thereto and any proceeds consisting of chattel paper or instruments, (f) to appear in and defend, any action or proceeding that may affect Assignor's rights under or Assignee's interest in the Sublease, (g) to keep separate, accurate and complete records of the Sublease and to provide Assignee with such records and such other reports and information relating to the Sublease as Assignee may reasonably request from time to time, (h) to keep its interest in the Sublease free of all levies and security interests or other Liens or charges except those approved in writing by Lessor, Assignee and Secured Party, (i) to comply with all laws, regulations and ordinances relating to the Sublease applicable to Assignor and (j) to obtain and deliver to Assignee and, before receipt of the Secured Party's Release Notice, to Secured Party, and before Lease Termination, Lessor, simultaneously with the execution of the Sublease, a Sublessee Acknowledgment.

5.    Authorized Action by Assignee.  Assignor hereby irrevocably appoints Assignee as its attorney-in-fact to do (but Assignee shall not be obligated to and shall incur no liability to Assignor or any third party for failure so to do) any act that Assignor is obligated by the Sublease to do, and to exercise such rights and powers as Assignor might exercise with respect to the Sublease, including, without limitation, the right to (a) collect by legal proceedings or otherwise and endorse, receive and receipt all interest, payments, proceeds and other sums and property now or hereafter payable on or on account of the Sublease, (b) enter into any extension, reorganization, consolidation or other agreement pertaining to the Sublease, (c) insure, process and preserve the Sublease and (d) make any compromise or settlement, and take any action it deems advisable with respect to the Sublease.  Assignor agrees to reimburse Assignee on demand for any costs and expenses, including, without limitation, attorneys' fees, that Assignee may incur while acting as Assignor's attorney-in-fact hereunder, all of which costs and expenses are included in the Obligations secured hereby.  Assignee may exercise the foregoing rights only after the occurrence of a U.S. Lease Event of Default.

6.    Notification to Sublessee; Collection.  Assignor agrees that Secured Party, until receipt of the Secured Party's Release Notice, and thereafter Lessor, until Lease Termination, and thereafter Assignee, may, upon the occurrence of a U.S. Lease Event of Default, notify and demand that Sublessee make payment of all amounts owing under the Sublease which are assigned hereby directly to Lessor, Secured Party or Assignee, as the case may be, and, without the execution of any

further instruments, at the time of such U.S. Lease Event of Default, Lessor, Assignee or Secured Party may succeed to all rights of Assignor as sublessor under the Sublease.   Notwithstanding any other provision of this Assignment or the U.S. Operative Documents, unless a U.S. Lease Event of Default exists Assignor shall continue to act in all respects as sublessor under the Sublease and shall collect all payments due thereunder, enforce all rights thereunder and be responsible for all obligations thereunder.

7.   Default and Remedies.   Assignor shall be deemed in default under this Assignment upon the occurrence of a U.S. Lease Event of Default.  Upon the occurrence of any such U.S. Lease Event of Default, Assignee may, at its option, and without notice to or demand on Assignor and in addition to all rights and remedies available to Assignee under the U.S. Lease and the Representation Agreement or other U.S. Operative Documents, do any one or more of the following:  (a) foreclose or otherwise enforce Assignee's security interest in any manner permitted by law or provided for in this Assignment, (b) sell or otherwise dispose of the Sublease for cash or credit or future delivery on such terms and in such manner as Assignee may determine, (c) recover from Assignor all costs and expenses, including, without limitation, reasonable attorneys' fees (which shall include allocated charges of internal counsel), incurred or paid by Assignee in exercising any right, power or remedy provided by this Assignment or by law, and (d) exercise any and all rights and remedies available under the Sublessee Acknowledgment and/or available to a secured party under the Uniform Commercial Code of any applicable jurisdiction.

8.   Cumulative Rights.   The rights, powers and remedies of Assignee under this Assignment shall be in addition to all rights, powers and remedies given to Assignee by virtue of any statute or rule of law, the U.S. Lease or any other U.S. Operative Document, all of which rights, powers and remedies shall be cumulative and may be exercised successively or concurrently without impairing Assignee's security interest in the Sublease.

9.   Waiver.   Any forbearance or failure or delay by Assignee in exercising any right, power or remedy shall not preclude the further exercise thereof, and every right, power or remedy of Assignee shall continue in full force and effect until such right, power or remedy is specifically waived in a writing executed by Assignee. Assignor waives any right to require Assignee to proceed against any Person or to pursue any remedy in Assignee's power.

10.   Setoff.   Assignor agrees that Assignee may exercise its rights of setoff with respect to the Obligations in the same manner as if such Obligations were unsecured.

11.   Binding Upon Successors.   All rights of Assignee under this Assignment shall inure to the benefit of its successors and assigns, and all obligations

5

of Assignor hereunder shall bind its heirs, executors, administrators, successors and assigns.

12.   CHOICE OF LAW. THIS ASSIGNMENT IS BEING DELIVERED IN SAN FRANCISCO, CALIFORNIA AND SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE INTERNAL LAWS OF CALIFORNIA IN ACCORDANCE WITH SECTION 44108 OF THE TRANSPORTATION CODE AND, WHERE APPLICABLE AND EXCEPT AS OTHERWISE DEFINED HEREIN, TERMS USED HEREIN SHALL HAVE THE MEANINGS GIVEN THEM IN THE VIRGINIA UNIFORM COMMERCIAL CODE.   IF THE ASSIGNEE OR ANY OTHER PERSON COMMENCES A SUIT IN ANY OTHER JURISDICTION, THE PARTIES AGREE THAT THIS ASSIGNMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF CALIFORNIA WITHOUT REFERENCE TO SUCH OTHER JURISDICTION'S CHOICE OF LAW DOCTRINES.

13.   Notice.      Any written notice, consent or other communication provided for in this Assignment shall be given, if to Assignor or Assignee, as provided in the Representation Agreement, or, if to the Sublessee, as provided in the Sublease.

6

IN WITNESS WHEREOF, the parties hereto have caused this Sublease Assignment to be duly executed by their respective officers and agents thereunto duly authorized as of the date and year first written above.

FAIRBROOK LEASING, INC.,
as Assignor

By:_____
Name: Torbjörn Lindberg
Title:  President

By:_____
Name: Gena H. Laurent
Title:  Vice President

FIRST    SECURITY    BANK,    NATIONAL
ASSOCIATION, not in its individual capacity
but solely as Owner Trustee,
        as Assignee

By_____
Name:
Title:

NATIONAL WESTMINSTER BANK PLC,
as Lender and Secured Party

By: _____
Name:
Title:

SWEDISH AIRCRAFT TWO KB
as Lessor

By: _____
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have caused this Sublease Assignment to be duly executed by their respective officers and agents thereunto duly authorized as of the date and year first written above.

**FAIRBROOK LEASING, INC.,**
as Assignor

By:_____
Name: Torbjörn Lindberg
Title:  President

By:_____
Name: Gena H. Laurent
Title:  Vice President

**FIRST   SECURITY   BANK,   NATIONAL ASSOCIATION, not in its individual capacity but solely as Owner Trustee,**
as Assignee

By_____
Name:      Nancy M. Dahl
Title:        Vice President

**NATIONAL WESTMINSTER BANK PLC,**
as Lender and Secured Party

By:      _____
Name:
Title:

**SWEDISH AIRCRAFT TWO KB**
as Lessor

By:      _____
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have caused this Sublease Assignment to be duly executed by their respective officers and agents thereunto duly authorized as of the date and year first written above.

FAIRBROOK LEASING, INC.,
    as Assignor

By:_____
Name: Torbjörn Lindberg
Title:  President


By:_____
Name: Gena H. Laurent
Title:  Vice President

FIRST   SECURITY   BANK,   NATIONAL ASSOCIATION, not in its individual capacity but solely as Owner Trustee,
    as Assignee

By_____
Name:
Title:

NATIONAL WESTMINSTER BANK PLC,
as Lender and Secured Party

By: _____
Name: AJR HIGGINS
Title: ASSOCIATE DIRECTOR

SWEDISH AIRCRAFT TWO KB
as Lessor


By: _____
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have caused this Sublease Assignment to be duly executed by their respective officers and agents thereunto duly authorized as of the date and year first written above.

FAIRBROOK LEASING, INC.,
as Assignor

By:_____
Name: Torbjörn Lindberg
Title:  President


By:_____
Name: Gena H. Laurent
Title:  Vice President

FIRST   SECURITY   BANK,   NATIONAL ASSOCIATION, not in its individual capacity but solely as Owner Trustee,
as Assignee

By_____
Name:
Title:

NATIONAL WESTMINSTER BANK PLC,
as Lender and Secured Party


By:  _____
Name:
Title:

SWEDISH AIRCRAFT TWO KB
as Lessor

By:  _____
Name:  Lars B. Flodman
Title:        President

Receipt in San Francisco, California of an original counterpart of the foregoing Sublease Assignment is hereby acknowledged on _____, 1997.

FIRST   SECURITY   BANK,   NATIONAL ASSOCIATION, not in its individual capacity but solely as Owner Trustee, as Assignee

By_____
Name:
Title:

## ACKNOWLEDGMENT AND CONSENT AGREEMENT

### R E C I T A L S

Reference is made to that certain Aircraft Sublease Agreement dated as of June 1, 1997 between Fairbrook Leasing, Inc., a Delaware corporation (" U.S. Lessee"), and Mesaba Aviation, Inc., a Minnesota corporation ("Sublessee") together with that certain Sublease Supplement No. 1 thereto dated June 10, 1997 being filed with the Federal Aviation Administration ("FAA") contemporaneously herewith as one document (the "Sublease") pursuant to which U.S. Lessee, as sublessor, is subleasing to Sublessee, as sublessee (i) one Saab 340B commercial aircraft bearing U.S. Registration No. N590MA and bearing manufacturer's serial number 340B-181 on the airframe constituting such aircraft, and two General Electric Model CT7-9B engines installed on such aircraft and two Dowty Rotol propellers installed on such aircraft, together with any replacements thereof or substitutions therefor (the "Aircraft");

Swedish Aircraft Two KB ("Lessor") purchased the Aircraft pursuant to that certain Sale and Purchase Agreement dated as of December 20, 1989 between Lessor and Saab-Scania AB and in connection with which National Westminster Bank PLC ("Lender") made a loan to Lessor, which loan is secured (i) under Loan and Security Agreement (Series A) No. 1 dated as of April 10, 1990 between Lessor, as borrower, and National Westminster Bank PLC, as secured party on behalf of Lender ("Secured Party"), together with Loan Agreement Supplement (Series A) No. 1 dated April 10, 1990 filed for recording with the FAA on April 10, 1990 (the "Loan Agreement and Assignment (Series A)"), and (ii) under Owner Trustee Security Agreement and Assignment No. 1 dated as of April 10, 1990, between First Security Bank, National Association, as pledgor, and Secured Party, as secured party, filed with the FAA on April 10, 1990 (the "Owner Trustee Security Agreement");

First Security Bank, National Association ("U.S. Lessor"), acting not in its individual capacity but solely in its capacity as trustee under a trust agreement with Security Pacific Leasing Corporation ("Security Pacific") acquired its rights in the Aircraft pursuant to that certain Amended and Restated Aircraft Lease Agreement No. 1 dated as of April 10, 1990 between Lessor, as lessor, and U.S. Lessor, as lessee, together with that certain Aircraft Lease Supplement No. 1 thereto dated April 10, 1990 filed with the FAA on April 10, 1990 (the "Lease");

The Aircraft is leased by U.S. Lessee, as lessee, pursuant to U.S. Lease Agreement No. 1 dated as of April 10, 1990 between U.S. Lessee, as lessee, and U.S. Lessor, as lessor, together with that certain U.S. Lease Supplement No. 1 thereto dated April 10, 1990, filed for recording with the FAA on April 10, 1990 (the "U.S. Lease"). Certain of the obligations of U.S. Lessee under the U.S. Lease are guaranteed by Fairbrook, Inc. ("Guarantor");

The Sublease is assigned to U.S. Lessor under a Sublease Assignment dated contemporaneously herewith among U.S. Lessee, as assignor, and U.S. Lessor, Lessor and Secured Party, as assignees (the "Sublease Assignment") and is further assigned to Secured Party under the Owner Trustee Security Agreement and (pursuant to a subordinate assignment and grant) to Lessor under the Lease and is further assigned by Lessor to Secured Party as collateral under Loan Agreement and Assignment (Series A); and

WHEREAS, unless otherwise defined herein, capitalized terms used herein shall have the meanings assigned to them in the Sublease;

NOW, THEREFORE, in order to induce U.S. Lessee, U.S. Lessor, Lessor, Lender B, Security Pacific, Lender, Guarantor and Secured Party to carry out the transactions contemplated by the U.S. Operative Documents (as defined in the Loan Agreement and Assignment (Series A)), and acknowledging that such parties are relying hereon, Sublessee hereby agrees with such parties as follows:

1.    Assignment and Subordination of Sublease.

(a)    Sublessee hereby acknowledges that U.S. Lessee has assigned and granted to U.S. Lessor, and U.S. Lessor has assigned and granted to Secured Party (and pursuant to a subordinate assignment and grant) to Lessor, that Lessor has assigned and granted to Secured Party, a security interest in the Sublease and in all rentals and other payments due and to become due thereunder (other than Excepted Payments (as defined in the Sublease Assignment)) and consents to the foregoing assignments and grants of security interests.

(b)    Upon receipt of notice by Sublessee from Secured Party that a U.S. Lease Event of Default exists under (and as defined in) the U.S. Lease, and a demand therefor, Sublessee will, until such U.S. Lease Event of Default has been waived or cured, pay directly to Secured Party, without setoff, counterclaim, deduction or abatement, by wire transfer of immediately available funds to such address as Secured Party shall designate to Sublessee from time to time in writing, (i) all rent and other sums due or thereafter to become due from Sublessee under the Sublease and the Sublease Assignment, (ii) all amounts payable under the Sublease by reason of damage, destruction or loss of the Aircraft or by reason of the acceleration of any liability of Sublessee for rent or other sums payable under the Sublease, and (iii) all other amounts at any time owing by Sublessee to U.S. Lessee under the Sublease, except, however, Excepted Payments.

(c)    Upon such notice by the Secured Party, and without the execution of any further instruments, Secured Party may exercise all rights of U.S. Lessee as sublessor under the Sublease, and Sublessee shall be bound to Secured Party under all of the terms, covenants and conditions of the Sublease, with the same force and

effect as if Secured Party were the Sublessor under the Sublease, and Sublessee does hereby agree to render all performances due from Sublessee under the Sublease to and for the sole benefit of Secured Party.

(d)     Sublessee hereby acknowledges that the Sublease is, and will continue at all times to be, subordinate to the Lease and subject to all terms and conditions of the Lease and subordinate to the U.S. Lease and subject to all terms and conditions of the U.S. Lease, and subordinate to the rights of the Secured Party under the Loan Agreement (Series A) and the Owner Trustee Security Agreement. Without limitation on the generality of the foregoing, Sublessee hereby acknowledges and agrees, that upon notice by the Secured Party to Sublessee that a U.S. Lease Event of Default exists and is continuing, the Secured Party may terminate any rights of Sublessee (other than any rights that Sublessee may have against U.S. Lessee, as described in the fifth sentence of this subsection (d)) under the Sublease, provided that Secured Party shall give Sublessee  five (5) business days prior written notice of such termination, provided that any such termination of the Sublease by the Secured Party based upon a U.S. Lease Event of Default shall not constitute or be deemed to constitute a termination under Section 22 of the Sublease and provided further that nothing herein shall affect U.S. Lessee's obligation under the U.S. Lease to return the Aircraft in the manner and in the condition required by and otherwise in accordance with Section 5 of the U.S. Lease.  Sublessee agrees to cooperate with Secured Party and take no action inconsistent with those of Secured Party in connection with the termination or taking of possession of the Aircraft.  Sublessee agrees that Secured Party shall have the rights set forth above regardless of whether Sublessee had prior notice of, or an opportunity to cure, said U.S. Lease Event of Default.  SUBLESSEE HEREBY WAIVES, EFFECTIVE UPON FIVE (5) BUSINESS DAYS FOLLOWING RECEIPT OF WRITTEN NOTICE BY SECURED PARTY TO SUBLESSEE THAT A U.S. LEASE EVENT OF DEFAULT EXISTS UNDER THE U.S. LEASE, ANY RIGHT TO THE PEACEFUL AND QUIET ENJOYMENT AND USE BY SUBLESSEE OF THE AIRCRAFT AND ALL OTHER RIGHTS OF SUBLESSEE UNDER THE SUBLEASE AND ACKNOWLEDGES THAT IT MAY LOSE THE RIGHT TO POSSESS THE AIRCRAFT UNDER THE SUBLEASE EVEN IF IT IS NOT IN DEFAULT.  Nothing herein shall be construed to limit Sublessee's rights as against U.S. Lessee hereunder if the Sublease is terminated or if Sublessee's right to possess the Aircraft hereunder is terminated because of such repossession.  Sublessee has the right, following any actual or threatened termination of this Sublease or repossession to inform U.S. Lessor of its desire to attorn to U.S. Lessor and to request that U.S. Lessor accept Sublessee as a direct lessee.  Under the terms of any such attornment, if accepted by U.S. Lessor, Sublessee will be required to perform all of its obligations under this Sublease directly to and for the benefit of U.S. Lessor.  In no event shall any such attornment occur without the prior written consent of U.S. Lessor, and U.S. Lessor may refuse such substitution for any reason, in its sole discretion.  Sublessee further acknowledges that Secured Party may elect to preserve the Sublease following a U.S. Lease Event of Default and the giving of notice thereof by Secured Party to Sublessee.

(e)     Lessor shall succeed to all rights of Secured Party pursuant to paragraphs 1(b), (c) and (d) after Secured Party has given the Secured Party's Release Notice.  U.S. Lessor shall succeed to all such rights after Secured Party has given the Secured Party's Release Notice and after the Lease has terminated.

2.     <u>Representations and Warranties</u>.  Sublessee hereby represents and warrants to U.S. Lessee, U.S. Lessor, Guarantor, Lender, Lessor, Security Pacific, Lender B, each Noteholder and Secured Party as follows:

(a)     U.S. Lessee has subleased the Aircraft to Sublessee and, upon delivery of the Sublease Supplement, Sublessee has unconditionally accepted the Aircraft pursuant to the terms of the Sublease, and Sublessee has possession of the Aircraft;

(b)     Sublessee is a corporation duly incorporated under the laws of the state of Minnesota, validly existing and in good standing under the laws of said state and is duly qualified and authorized to do business as a foreign corporation wherever the nature of its activities require such qualification and authorization.  Sublessee is an "air carrier" engaged in interstate air transportation, as such term is used in Section 40102(a)(2) of the Transportation Code, is a "citizen of the United States" as defined in Section 40102(a)(15) of the Transportation Code, is certificated under Section 44705 of the Transportation Code, is authorized to operate Saab 340B Aircraft pursuant to FAR Part 121 and possesses all necessary certificates, franchises, licenses, permits, authorizations, rights, concessions and consents of or from all applicable governmental authorities or agencies of the United States, including without limitation, the FAA, that are required for the operation of the routes flown by Sublessee and the conduct of the business as now being conducted;

(c)     Sublessee has full corporate power, authority and legal right to execute, deliver and perform or cause to be performed each and every term of this Acknowledgment, the Sublease, the Sublease Supplement, and all other documents executed or required to be executed by Sublessee (collectively, the "Sublessee Documents"), the same, having been duly authorized by all necessary corporate action of Sublessee and duly executed and delivered by the authorized officers of Sublessee, and constituting legal, valid and binding obligations of Sublessee and enforceable in accordance with such terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the rights of creditors generally, and general principles of equity;

(d)     The execution of this Acknowledgment, the Sublease, the Sublease Supplement, and all other Sublessee Documents and the performance by Sublessee of its obligations under this Acknowledgment or the Sublease will not contravene or violate any provision of its charter or Articles or Certificate of

4

Incorporation or By-Laws or materially contravene or violate or, to the best of Sublessee's knowledge, otherwise contravene or violate in any other respect, any contract, agreement, indenture or other instrument either binding upon Sublessee or to which it is subject, nor will any such contract, agreement, indenture or other instrument create a Lien (other than those permitted under Section 11 of the Sublease) with respect to the Sublease or to the Aircraft which is subject hereto;

(e)   To Sublessee's knowledge, there is no law or governmental regulation or order that would be materially contravened by the execution, delivery and performance of this Acknowledgment or the Sublease by Sublessee or by the performance of any term and condition contained herein, or in the Sublease, the Sublease Supplement or in any of the other Sublessee Documents by Sublessee;

(f)   No consent of shareholders of Sublessee or of any holders of indebtedness of Sublessee and no consent or approval of, giving of notice, or any filing, recording or registration, other than the normal FAA registration filing with or the taking of any other action in respect of any governmental authority, body, commission or agency or any other entity is or will be required as a condition to the execution of this Acknowledgment or the Sublease or as a condition to or in connection with the authorization, execution, delivery or performance hereof by Sublessee, except those which have been duly made or obtained, certified copies of which have been or will be delivered to U.S. Lessee, prior to delivery of the Aircraft to Sublessee.  The Sublease and its performance by Sublessee will not materially violate or materially contravene any law, regulation, order, judgment or other similar obligation imposed by any government or regulatory agency, court or administrative or legislative body and to the best of Sublessee's knowledge, the Sublease and its performance by Sublessee will not violate or contravene in any other respect any law, regulation, order, judgment or other similar obligation imposed by any government or regulatory agency, court, administrative or legislative body;

(g)   There is no action or proceeding pending to Sublessee's knowledge or threatened against Sublessee or any of its affiliates before any court or administrative agency which might result in any material adverse effect on the assets, liabilities, business, prospects, profit, condition or operations, financial or otherwise, of Sublessee or its affiliates, except as disclosed to U.S. Lessee in writing prior to delivery of the Aircraft;

(h)   Sublessee is fully familiar with all the covenants, terms and conditions of the Sublease and is not knowingly, after due inquiry, materially in default with respect thereto;

(i)   All of Sublessee's financial statements that have heretofore been provided by Sublessee to U.S. Lessee in conjunction with this transaction fairly and accurately represent the financial condition and income of Sublessee as of the dates given and as of such dates such financial statements do not contain any untrue

5

statements of a material fact, nor do they omit to state a material fact required to be stated therein or necessary in order to prevent such financial statements from being misleading; and, there is no fact, situation or event which, so far as can be foreseen by Sublessee, will materially adversely affect the financial condition of Sublessee;

(j)     All Federal income tax returns required to be filed by Sublessee have, in fact, been filed, and all taxes which are shown to be due and payable in such returns have been paid.  No material controversy in respect of any federal income taxes due is pending or to the knowledge of Sublessee threatened, which controversy if determined adversely would materially and adversely affect Sublessee's ability to perform its obligations hereunder.  The provision for taxes on the books of Sublessee is, to the best of its knowledge, adequate for all open years, and for its current fiscal period;

(k)     Sublessee is not to the best of its knowledge engaged in any transaction in connection with which it could be subjected to either a civil penalty assessed pursuant to Section 502(c) of the Employment Retirement Income Security Act of 1974, as amended ("ERISA") or any tax imposed by Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"), no material liability of the Pension Benefit Guaranty Corporation has been or is expected by Sublessee to be incurred with respect to any employee pension benefit plan (as defined in Section 3 of ERISA) maintained by Sublessee, and there has been no reportable event (as defined in Section 4043(b) of ERISA) with respect to any such employee pension benefit plan. There is no event of termination of any such employee pension benefit plan by the Pension Benefit Guaranty Corporation, and no accumulated funding deficiency (as defined in Section 302 of ERISA or Section 412 of the Code), whether or not waived, exists with respect to any such employee pension benefit plan;

(l)     Sublessee's chief executive office and chief place of business, its registered office and the place where it keeps its corporate records is at 7501 26th Avenue South, Minneapolis, MN 55450; the place where the Aircraft is based is Minneapolis, Minnesota or Detroit, Michigan; and the place where all records pertaining to the Aircraft are kept is located at Minneapolis, Minnesota;

(m)     the Aircraft is covered by effective insurance policies as required by the Sublease, and all premiums due on or prior to the date hereof in respect of such insurance policies have been paid in full;

(n)     the registration, maintenance, use, operation and location of the Aircraft will be as contemplated by the Sublease;

(o)     the Sublease and Sublease Supplement thereto and the other Sublessee Documents represent the sole agreement between U.S. Lessee and Sublessee relating to the maintenance, use, operation or insurance coverage of or on the Aircraft and the Rent and other payments (except for a security deposit) due from

Sublessee to U.S. Lessee with respect to the Aircraft, and Sublessee acknowledges that no agreement amending, supplementing or modifying in any material way the provisions of the Sublease, any Supplement thereof, or any substitute Sublease therefor, shall be effective until the chattel paper counterpart of such agreement or substitute Sublease has been delivered to U.S. Lessor; and

      (p)    The Aircraft will be delivered in Minneapolis, Minnesota and will be operated from either Minneapolis or Detroit, Michigan after Sublessee receives possession of the Aircraft.

      3.    <u>Covenants</u>.    Sublessee covenants and agrees with U.S. Lessee, U.S. Lessor, Lessor and Secured Party as follows:

      (a)    Upon request of U.S. Lessor, U.S. Lessee, Lessor or Secured Party, Sublessee shall promptly furnish to U.S. Lessee, U.S. Lessor, Lessor or Secured Party such information within Sublessee's knowledge or readily obtainable by it as may be required to enable U.S. Lessee, U.S. Lessor, Lessor or Secured Party timely to file any reports required or advisable to be filed by U.S. Lessee, U.S. Lessor, Lessor or Secured Party with any Governmental Body to give effect to the transactions contemplated by the U.S. Operative Documents.

      (b)    Sublessee will cause to be done, executed, acknowledged and delivered all and every one of such further acts, conveyances and assurances as U.S. Lessee, U.S. Lessor, Lessor, Lender, or the Secured Party shall reasonably request for accomplishing the purposes of the Sublease and Sublessee Documents; forthwith upon delivery of the Aircraft, Sublessee shall cause such Aircraft at all times (to the extent that it is within the control of Sublessee) to remain duly registered, to the extent permitted by applicable law, in the name of the U.S. Lessor under the Transportation Code.

      (c)    In connection with any recording, filing, rerecording or refiling of the Sublease, any Sublease Supplement or any financing statement or other instrument under the laws of the United States or any state thereof that shall reasonably be deemed necessary or advisable by U.S. Lessee, U.S. Lessor, Lessor or Secured Party after the delivery date of the Aircraft in order to establish, protect and perfect, or to maintain the establishment, protection and perfection of, U.S. Lessor's and Lessor's respective interests in the Aircraft (including the Airframe, Propellers and Engines), and in the Sublease or Secured Party's security interest therein, Sublessee will cooperate by executing and delivering such documents or instruments in recordable form and, if otherwise required under the Sublease, accomplish at U.S. Lessee's expense such filing, recording, rerecording or refiling; <u>provided</u> that the foregoing covenant is subject to Sublessee's obtaining such cooperation from U.S. Lessee, U.S. Lessor, Lessor, Security Pacific, Secured Party, and Noteholders as may reasonably be required and to the extent then so required, to U.S. Lessor and Security Pacific remaining "citizens of the United States" as defined in Section 40102(a)(15) of the Transportation Code, and

not otherwise taking any affirmative actions not required or permitted by any U.S. Operative Documents to which Sublessee is a party which result in the Aircraft being ineligible for U.S. registration.

     (d)    Sublessee agrees to furnish to Secured Party, U.S. Lessee, U.S. Lessor and Lessor:

     (i)    forthwith upon any officer of Sublessee obtaining actual knowledge of any condition or event that constitutes an Event of Default or a Default under the Sublease with respect to the maintenance, use, operation or insurance coverage or return of the Aircraft, a certificate signed by its chief executive officer or chief financial officer specifying the nature and period of existence thereof and what action Sublessee has taken or is taking or proposes to take with respect thereto;

     (ii)    if not otherwise communicated pursuant to this paragraph 3(d), notice in writing of any legal proceeding by or against Sublessee the adverse determination of which would materially adversely affect the Aircraft or Sublessee's interest in the Aircraft; and

     (iii)    with reasonable promptness, such information as may be readily obtainable by Sublessee which is required to enable U.S. Lessee, U.S. Lessor, Lessor or Secured Party to file any reports required by any Governmental Body as a result of the interest of the U.S. Lessee, U.S. Lessor, Lessor or Secured Party in the Aircraft, and such other information or data with respect to the Sublessee as may be reasonably requested by U.S. Lessee, U.S. Lessor, Lessor or Secured Party.

     (e)    Sublessee will perform its covenants and agreements contained in the Sublease, and such covenants and agreements shall, upon a U.S. Lease Event of Default, be deemed to be given and agreed herein as fully as if set forth herein, and Secured Party (until issuance of the Secured Party's Release Notice), Lessor until termination of the Lease, and U.S. Lessor (following such Lease termination) shall be entitled to the benefit of all covenants to be performed by Sublessee under the Sublease as if named therein as Sublessor.

     (f)    Sublessee will notify U.S. Lessee, U.S. Lessor, Secured Party and Lessor of any change in its chief executive office or chief place of business or registered office as specified in Section 2(l) of this Acknowledgment and Consent within 20 days after such change.

     (4)    <u>Expenses</u>.    Sublessee agrees to reimburse Secured Party, Lessor, U.S. Lessee and U.S. Lessor for all ongoing out-of-pocket costs and expenses (including, without limitation, reasonable attorneys' fees, which may include the documented reasonably allocated time charges of internal counsel) in connection with (i) any Event of Default or Default by Sublessee under the Sublease or the enforcement against Sublessee by Secured Party, Lessor, U.S. Lessee or U.S. Lessor of its rights

8

with respect thereto and (ii) the breach by Sublessee of any representation or warranty or covenant of Sublessee set forth in the Sublessee Acknowledgment.

(5)    GOVERNING LAW. THIS ACKNOWLEDGMENT AND CONSENT AGREEMENT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA.  IF A SUIT IS COMMENCED IN ANY OTHER JURISDICTION, THE PARTIES AGREE THAT THIS ACKNOWLEDGMENT AND CONSENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF CALIFORNIA WITHOUT REFERENCE TO SUCH OTHER JURISDICTION'S CHOICE OF LAW DOCTRINES.

IN WITNESS WHEREOF, the undersigned has duly executed this Acknowledgment and Consent Agreement.

**MESABA AVIATION, INC.**
**as Sublessee**

By: *Danl Richardson*
VICE PRESIDENT

Date: *July 10* , 1997

Receipt in San Francisco, California of an original counterpart of the foregoing Acknowledgment and Consent Agreement is hereby acknowledged on ____ ___, 1997.

**FIRST SECURITY BANK, NATIONAL ASSOCIATION, not in its individual capacity, but solely as Owner Trustee, as Lessor**

By_____
Name
Its: Authorized Representative